(58 South. 819.)

No. 18,997.

CORDILL v. QUAKER REALTY CO., Limited.

(May 6, 1912. Rehearing Denied June 4, 1912.)

*(Syllabus by the Court.)*

1. ESCHEAT (§ 4*) — GROUNDS — DEATH OF OWNER WITHOUT HEIRS—SUCCESSION.

The succession of persons who die without heirs, or which are not claimed by those having a right to them, belong to the state. Civ. Code, arts. 485 and 929.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. § 1; Dec. Dig. § 4.*]

2. ESCHEAT (§ 7*)—OPERATION AND EFFECT—TIME OF TAKING EFFECT—SUCCESSION.

The state becomes the owner at the time of the death of the former owner.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. §§ 18, 19, 22; Dec. Dig. § 7.*]

3. ESCHEAT (§ 8*)—DISPOSITION OF PROPERTY ESCHEATED—FREE SCHOOL FUNDS—SUCCESSION.

The proceeds of such property form a part of the free school fund of the state. Const. art. 229 of 1879 and article 298 of 1898.

[Ed. Note.—For other cases, see Escheat, Cent. Dig. §§ 20–22; Dec. Dig. § 8.*]

4. TAXATION (§ 213*)—PROPERTY SUBJECT—PUBLIC PROPERTY.

Public property is exempt from taxation. Const. art. 207 of 1879 and article 230 of 1898.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 353; Dec. Dig. § 213.*]

5. TAXATION (§ 213*)—ASSESSMENT — VALIDITY.

The act of the assessors in assessing public property is ultra vires, null and void. So is the act of the tax collector in attempting to sell such property for alleged delinquent taxes. Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 353; Dec. Dig. § 213.*]

6. ESTOPPEL (§ 62*)—EQUITABLE ESTOPPEL—PERSONS AFFECTED—STATE.

The state is not estopped by acts ultra vires its officers. Id.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 151–153; Dec. Dig. § 62.*]

7. TAXATION (§§ 337, 659*) — ASSESSMENT — NAME OF OWNER—NOTICE OF SEIZURE AND SALE.

Prior to the year 1890 property had to be assessed in the name of its owner, and notice of seizure and sale had to be served upon him. Kearns v. Collins, 40 La. Ann. 455, 4 South. 498; Le Blanc v. Blodgett, 34 La. Ann. 107; Davenport v. Knox, 34 La. Ann. 407; Maspereau v. City, 38 La. Ann. 400; McWilliams v. Michel, 43 La. Ann. 984, 10 South. 11; Martin v. Athletic Club, 48 La. Ann. 1051, 20 South. 181; Millaudon v. Gallagher, 104 La. 713, 29 South. 307.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 571–578, 1336, 1337; Dec. Dig. §§ 337, 659.*]

8. TAXATION (§ 734*)—TAX SALES—VALIDITY.

It is well established on principle and by authorities that a tax sale of property assessed in the name of one who is not the owner, without service of any notice of seizure on the real owner, is an absolute nullity and passes no title. George v. Cole, 109 La. 833, 33 South. 784; In re Sheehy, 119 La. 609, 44 South. 315; Lague v. Boagni, 32 La. Ann. 913; Bartley v. Sallier, 118 La. 98, 42 South. 657; Foreman v. Hinchliffe, 106 La. 234, 30 South. 762; Kearns v. Collins, 40 La. Ann. 455, 4 South. 498.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1470–1473; Dec. Dig. § 734.*]

9. TAXATION (§ 685*)—TAX SALES—CONFIRMATION.

Radical defects in tax assessments and sales cannot be validated by confirmation proceedings. Fix v. Dierker, 30 La. Ann. 175; Dodeman v. Barrow, 10 La. Ann. 193.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1375, 1376; Dec. Dig. § 685.*]

10. LIMITATION OF ACTIONS (§ 19*) — TAX SALES—SETTING ASIDE—PRESCRIPTION.

The prescriptive term of three years contained in article 233 of the Constitution has no application to the attempted sale of public property by tax collectors for alleged delinquent taxes.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73–85, 176; Dec. Dig. § 19.*]

11. LIMITATION OF ACTIONS (§ 11*) — PRESCRIPTION—PROPERTY AGAINST WHICH PRESCRIPTION RUNS.

Prescription runs against vacant successions (Civ. Code, art. 3526); but it does not run against vacant successions, where the state is present and takes the property, which belongs to it under the law.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. § 11.*]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by J. P. Cordill, administrator of the succession of Delphine Gravier, against the Quaker Realty Company, Limited. From a judgment for plaintiff, defendant appeals. Affirmed.

W. W. Wall, for appellant. C. C. Friedrichs and Ernest T. Florance, for appellee.

SOMMERVILLE, J. Plaintiff, for and on behalf of the state of Louisiana, sues the defendant company for the possession of certain property, and asks that the state of Louisiana be recognized as the owner thereof. He alleges that at one time Delphine Gravier was the owner. He asks that the state be put in possession of all the property left by said Delphine Gravier. Plaintiff further alleges that defendant pretends to hold the property under several tax titles and titles issued by the Auditor of Louisiana, which are null, void, and of no effect.

Defendant answers that it is the lawful owner of the property described in plaintiff's petition; that it acquired said pieces of property by Auditor's deeds, issued under Act 80 of 1888, as amended by Act 126 of 1896; that the property had been adjudicated to the state of Louisiana for unpaid taxes for the year 1882, and that it had been forfeited to the state for taxes for the years 1876 and 1877, all of which adjudication and forfeitures had been duly registered in the office of the register of conveyances; that it had filed the proper proceedings for the confirmation of its titles in the civil district court for the parish of Orleans; and that there had been judgments in its favor, as prayed for. It pleads the prescription of three years, as provided in article 233 of the state Constitution. It further pleads that the state of Louisiana is equitably and by deed estopped from claiming the ownership of said property.

[1-3] The property involved in this suit belonged to Delphine Gravier, and it forms part of her succession. She died, intestate, and without heirs. See Succession of Delphine Gravier, 125 La. 733, 51 South. 704. The property therefore "belongs to the state." Civil Code, articles 485 and 929. Delphine Gravier died in the year 1882, her succession is vacant, and the state has been owner of her property since her death. Under article 229 of the Constitution of 1879, "the proceeds of vacant estates falling under the law to the state of Louisiana" belong to the free school fund. A similar provision is found in article 298 of the Constitution of 1898.

The defendant holds the two pieces of property under two separate deeds from the Auditor, representing that the property had been adjudicated for state taxes for the year 1882; these adjudications having been made by the tax collector of the state in the year 1885. It also claims that the property was forfeited to the state of Louisiana for the nonpayment of taxes for the years 1876 and 1877; and that when the Auditor issued deeds to defendant's author in title that the state transferred the titles acquired, not only through the adjudications to it for the

tax of 1882, but, also, those resulting from the forfeitures made to it for the taxes for the years 1876 and 1877.

[7,8] The evidence discloses that the property belonging to Delphine Gravier was never assessed in her name. One piece appears to have been assessed in the name of Fox, and the other in the name of Forstall. There is no explanation why the assessments of Delphine Gravier's property were made in the names of Fox and Forstall. The record does not disclose that they were the owners at any time of the pieces of property involved. The assessments, therefore, in the names of Fox and Forstall were absolute nullities, because, under the law as it existed prior to 1890, assessments had to be made in the name of the owners of property. The assessments not having been made in the name of the owner, and no proof of notice having gone to Delphine Gravier that her property was about to be forfeited to or sold by the state, such assessments, forfeitures, and sale are absolute nullities. They do not, and did not, vest any tax title whatever in the state of Louisiana; and therefore the state of Louisiana could not at any time have transferred any tax title to the property to any third person. In the case of Kearns, Curator, v. Collins, 40 La. Ann. 455, 4 South. 500, we say:

"In a number of cases tax sales have been annulled when the property has not been thus assessed [in the name of the owner] and has been sold to pay the taxes levied on it. This was done on the principle, long recognized, that the validity of tax sales is to be tested under the law in force at the time." Le Blanc v. Blodgett, 34 La. Ann. 107; Davenport v. Knox, 34 La. Ann. 407; Maspereau v. City, 38 La. Ann. 400; McWilliams v. Michel, 43 La. Ann. 984, 10 South. 11; Martin v. Athletic Club, 48 La. Ann. 1051, 20 South. 181; Millaudon v. Gallagher, 104 La. 713, 29 South. 307.

And in George v. Cole, 109 La. 833, 33 South. 791, we say:

"It is well established on principle and by authorities that a tax sale of property assessed in the name of one who is not the owner, without service of any notice of seizure on the real owner, is an absolute nullity and passes no title." See, also, In re Sheehy, 119 La. 608, 44 South. 315; Lague v. Boagni, 32 La. Ann. 913; Bartley v. Sallier, 118 La. 98, 42 South. 657; Foreman v. Hinchliffe, 106 La. 234, 30 South. 762; Kearns, Curator, v. Collins, already cited.

[9] The radical defects referred to cannot be validated by confirmation proceedings. See Fix v. Dierker, 30 La. Ann. 175; Dodeman v. Barrow, 10 La. Ann. 193.

It appears from the records in these confirmation proceedings that the state of Louisiana, or the succession of Gravier, was sought to be brought into court by service upon curators ad hoc. This cannot be done. The state of Louisiana is not unknown, or an absentee, in its own courts; and it cannot be cited and bound in that manner.

[4, 5] What has been said with reference to taxes of 1876 and 1877, for which the property was declared forfeited to the state, has application to the assessments for the year 1882, and the adjudications for the unpaid taxes of that year, in the year 1885. Assessments for that year (1882) were also in the names of Fox and Forstall, though they were not the owners. Delphine Gravier was dead at that time. Her succession was open, and it was a vacant one. The property of that succession belonged to the state of Louisiana; and it was not subject to assessment and taxation. (Article 207 of the Constitution of 1879 and article 230 of the Constitution of 1898.) The attempt on the part of the assessors to assess the property belonging to the state, and of the tax collector to sell it to enforce the collection of taxes thereon, was unauthorized, illegal, null and void. Those acts were ultra vires the officers who attempted to perform them. The proceeds of this estate, it being a vacant one, form a part of the free school fund of the state. (Article 229 of the Constitution of 1879 and article 254 of the Constitution of 1898.)

[6] Defendant pleads estoppel on the part of the state, because of the action of the Auditor, tax collector, and assessors, and points to decisions wherein we have held that the state is estopped from denying or disregarding the actions of. its officers. There is a large distinction between the cases cited and the one under consideration. Here the officers referred to were not only not authorized to act in the way they did, but they were expressly prohibited by the fundamental law of the land from doing so. Vacant successions belong to the state. The proceeds form part of the free school fund. Public property is exempt from taxation. Assessors can assess only the property indicated in the revenue statutes, which exclude public property. Tax collectors are authorized to collect taxes only on such property as was legally assessed. They could not adjudicate public property to the state, or to any one else, for taxes illegally declared to be delinquent thereon; and the Auditor was only authorized to make sales under Act 80 of 1888 of property which had been duly adjudicated to the state for unpaid taxes. The unauthorized acts of the assessors, tax collector, and Auditor cannot have the effect of binding the state of Louisiana, or of estopping it from claiming the property belonging to it, for the benefit of the free school fund. In Slattery v. Heilperin & Leonard, 110 La. 86, 34 South. 139, we say:

"The assessing officer, who assesses property not segregated from the public domain, does not bind the state. The land not being taxable, no title passes, and the state is not estopped."

Defendant had no good or valid titles to the land in question.

[10] The prescription of three years pleaded by defendant, under the terms of article 233 of the Constitution of 1898, will not be sustained. The property in question was state property, and therefore not subject to assessment, or taxation, or sale for an erroneous delinquency. The state took it, as owner, under the law, and not as a purchaser at a tax sale for delinquent taxes. The prescription provided for in article 233 has application only to tax sales made by the tax collectors. Where there has been no sale, or where the sale is an absolute nullity, being acts ultra vires the assessors and tax collectors, it is not a tax sale, and the article of the Constitution has no application whatever. Besides, article 193 of the Constitution provides that:

"Prescription shall not run against the state in any civil matter, unless otherwise provided in this Constitution, or expressly by law."

[11] Defendant argues that prescription runs against plaintiff as a vacant succession under article 3526, C. C.; but the language used there shows that it has no reference to the vacant successions coming to the state of Louisiana. It reads: Prescription "does run against the vacant succession, though no curator has been appointed to such succession." There can be no curator appointed to represent the state of Louisiana, where it takes the property of a vacant succession belonging to it. The return of the property of the individual to the state does not require any acceptance on the part of the state, as might be the case with irregular heirs or absentees. Considering this question in McCullough et al. v. Minor, Executor, 2 La. Ann. 466, we say:

"We consider that, for the purposes of prescription, successions now represent, as they did under the Code of 1808 and under the Roman law, the person of the deceased, as long as the heirs leave their rights in abeyance, and avoid the responsibility and charges of asserting them."

The state, as we have seen, does not take in the capacity as heir. The property or succession belongs to the state. The state

takes without any application or act on its part.

We have seen that the state, in this instance, took possession, as owner of the property described, on the death of the former owner. It (the succession or the property) became part of the public domain. We said, in Sanchez and Wife v. Gonzalez, 11 Mart. (O. S.) 210:

"It is believed that we may safely assume, as a general rule of prescription, that the public domain is not subjected to it by any length of time."

See, also, Pepper v. Dunlap, 9 Rob. 283; McCastle v. Chaney, 38 La. Ann. 720; Reed v. Creditors, 39 La. Ann. 115, 1 South. 784; State v. Buck and Fruit Co., 46 La. Ann. 669, 15 South. 531.

But no term of prescription is pleaded under article 3526, C. C., and the court cannot furnish any. The subject needs no further consideration.

The pleas of estoppel and prescription were properly overruled, and the judgment appealed from is affirmed.